```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/3/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ELIZABETH RYAN,                                    :
                                                   :
                        Plaintiff,                 :
                                                   :         1:15-cv-2248-GHW
            -v -                                   :
                                                   :         MEMORANDUM OPINION
THE UNITED STATES OF AMERICA,                      :              AND ORDER
                                                   :
                        Defendant.                 :
------------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

> I.   INTRODUCTION

Ms. Elizabeth Ryan seeks to hold the government liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–80, for failing to repair a cracked sidewalk outside of a federal building in downtown Manhattan, which she alleges caused her to trip and fall. A government contract delegated responsibility for maintenance of the sidewalks at the property to a government contractor who, plaintiff concedes, was an independent contractor. In order to avoid the application of the independent contractor exception to the FTCA, which would deprive this Court of jurisdiction over her claim, Ms. Ryan posits that maintenance of the particular portion of the sidewalk where she fell may not have been included within the scope of the contractor's duties. Because plaintiff's position is unsupported by the text of the contract or any other facts, the Court finds that the independent contractor exception to the FTCA applies, and that the Court lacks subject matter jurisdiction over Ms. Ryan's claims. For the reasons outlined below, defendant's motion to dismiss is GRANTED.

II.     BACKGROUND

    A.  Facts Alleged

Ms. Ryan alleges that on October 18, 2010, she tripped and fell while walking on the sidewalk outside of 26 Federal Plaza in downtown Manhattan.  Compl. at ¶ 23.  The Jacob K. Javits Federal Building is located at 26 Federal Plaza.  Cuffee Decl. at ¶ 3, Dkt. No. 20.  Although her complaint is short on factual details, Ms. Ryan alleges that her fall was caused by "the dangerous, defective, unsafe, cracked, broken, sunken, and trap-like condition of the sidewalk" abutting 26 Federal Plaza.  Compl. at ¶ 23.  Ms. Ryan further alleges that the government, as owner of the premises, was negligent in failing to properly maintain and repair the sidewalk.  *Id.* at ¶ 26.  She seeks $2,000,000 in damages for unspecified injuries sustained by her fall.  *Id.* at ¶ 29.

In an exhibit to her opposition papers, Ms. Ryan includes a picture of the sidewalk at the time of her accident, depicting the allegedly defective condition:



Ms. Ryan also includes a picture of the sidewalk taken on July 22, 2015, demonstrating that the sidewalk has since been repaired, at some point, in the intervening period of nearly five years:



### B. Procedural History

Ms. Ryan first served notice of her claims upon the United States General Services Administration ("GSA") by submitting a Standard Form ("SF") 95 on April 13, 2012. *Id.* at ¶ 5; SF 95, Dkt. No. 19-2. In that form, Ms. Ryan claimed that as a result of the accident, she fractured her right shoulder and injured her left knee and hip. SF 95 at ¶ 10. At the time, she sought $1,000,000 in damages for her injuries. *Id.* at ¶ 12d. GSA did not take any action in response to Ms. Ryan's claim. Compl. at ¶ 6; McKeon Decl. at ¶ 7, Dkt. No. 19.

Plaintiff filed the present suit on March 25, 2015, bringing a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–80, and a state law claim under § 7-210 of the New York

City Administrative Code. The government filed a motion to dismiss Ms. Ryan's complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on June 16, 2015.

### C. Mechanical Services Contract

According to an affidavit submitted by Crystal Cuffee, a Contracting Officer at GSA, a mechanical services contract delegated responsibility for all maintenance and repairs at 26 Federal Plaza to an independent contractor, ABM Engineering Services Company ("ABM"). Cuffee Decl. at ¶ 3. GSA awarded ABM the mechanical services contract on August 25, 2004. *Id.* at ¶ 5; Service Contract at 1, Dkt. No. 20-1. The contract was in effect on the date of plaintiff's accident. Cuffee Decl. at ¶ 5; Service Contract at 362. The government includes as an exhibit the entire agreement, consisting of several hundreds of pages.

The mechanical services contract delegated to ABM responsibility for general maintenance and operation of three federal facilities, including 26 Federal Plaza, which together constituted the "Federal Plaza Complex."[1] *See* Service Contract at 37. Under the contract's "Statement of Work," ABM was required to provide "all management, supervision, labor, material, repair parts, tools, and equipment, and shall plan schedule, coordinate, and ensure effective and economical completion of all work and services specified in this contract." *Id.* at 35. Moreover, ABM was required to "have in its employ at all times a sufficient number of capable and qualified employees to enable it to properly, adequately, and safely, and economically manage, operate and maintain the facility." *Id.* at 64. The delegation of authority extended to supervision over ABM's employees; indeed, the contract provided that "[n]either GSA employees nor other Government employees are authorized to exercise either direct or indirect supervision over [ABM's] employees." *Id.* at 65.

---

[1] In addition to 26 Federal Plaza, the facilities covered by the contract included the Court of International Trade, 1 Federal Plaza; and the Howard Street Garage, 203-209 Howard Street. Service Contract at 37.

ABM was responsible for all "architectural and structural repairs" at the Federal Plaza Complex, including sidewalks. In relevant part, ABM agreed to provide "all labor, equipment and materials necessary to perform all architectural and structural maintenance and repairs . . . to the interior and exterior of the facility including but not limited to . . . sidewalks, driveways, roads, curbing, parking areas . . . ." *Id.* at 52–53. The contract states that the term "facility" is used interchangeably with "26 Federal Plaza" and "Federal Plaza" throughout the contract, and unless otherwise noted, also denotes the Federal Plaza Complex buildings. *Id.* at 37. The contract further specified that "[t]he level of maintenance shall assure that the property is free of missing components or defects that affect the safety, appearance, or intended use of the facility . . . ." *Id.* at 53. "Appearance", as defined in the contract, means "an appearance similar to the original finished appearance with only minor, unobjectionable deterioration resulting from normal use." *Id.* ABM was required to notify GSA "immediately" of any required repairs, *id.* at 54, and was required to maintain general liability insurance covering at least $500,000 for claims of bodily injury, *id.* at 211.

Under the mechanical services contract, ABM was generally responsible for conducting all architectural and structural repairs at the facility. Financial responsibility for the costs of such repairs, on the other hand, varied depending on the estimated cost of the repair. First, where the estimated cost of repairs were $5,000 or less, ABM was solely "responsible for accomplishing all architectural and structural repairs/replacements (including any that may have been preexisting) . . . .," and solely responsible for the entire cost of the repair. *Id.* at 53. Second, ABM was responsible for conducting repairs with estimated costs between $5,000 and $100,000, but ABM was only financially responsible for the first $5,000 of the repair's costs. *Id.* at 53. The contract expressly prohibited ABM from lumping together individual repairs in order to avoid paying the first $5,000 of costs for several individual repairs. *Id.* Repair work in this category was subject to prior GSA agreement regarding the repair's price. *Id.* at 54. In some limited cases, such as where a repair

was needed because ABM failed to perform preventative maintenance, ABM was solely responsible for all costs up to $100,000.  *Id.*  Third, and finally, ABM was not required to perform any repairs with estimated costs exceeding $100,000.  *Id.* at 56.  Only in circumstances where ABM failed to make timely required repairs or failed to provide a reasonable price estimate did GSA expressly reserve the right to have a contractor other than ABM perform a repair.  *Id.* at 55–56.

Thomas Polet, the former Senior Assistant Property Manager at the time of plaintiff's accident, confirmed ABM's responsibility to maintain the sidewalks surrounding 26 Federal Plaza.  Dkt. No. 27.  In a written declaration, Mr. Polet states that "ABM was responsible for maintenance and repair of all of the sidewalks surrounding the Javits Building, from the edge of the building to the curbs of the streets."  Polet Decl. at ¶ 5.  According to Mr. Polet, "[t]his includes the sidewalk location . . . where Plaintiff alleges she fell."  *Id.*  With respect to supervision over ABM's activities, Mr. Polet states that responsibility and supervision of day-to-day architectural and structural repairs was delegated to ABM, and that "GSA in no way controlled how ABM implemented its architectural and structural repair practices (specifically including sidewalk repair and maintenance) on a daily or any other routine basis."  *Id.* at ¶ 6.

Mr. Polet acknowledges that the sidewalk at issue appears to have been repaired at some point since plaintiff's accident.  *Id.* at ¶ 9.  However, he indicates that GSA is not aware of any record of the repair having been made, and confirms that "[t]he GSA did not repair the sidewalk location where Plaintiff alleges that she fell."  *Id.*  Mr. Polet states that this is because the estimated cost of repairing the sidewalk depicted in plaintiff's photograph would have been less than $5,000, and in no event more than $100,000.  *Id.* at ¶¶ 8–9.  As such, ABM would have directed, supervised, and controlled the repair.  *Id.* at ¶ 9.

### III. ANALYSIS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The determination of whether the Court has subject matter jurisdiction "is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir. 2008)).

Plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova*, 201 F.3d at 113. "While the Court must accept as true all factual allegations in the complaint, the court may not draw any jurisdictional inferences in favor of the plaintiff." *Squicciarini v. United States*, No. 12-cv-2386 (ER), 2013 WL 620190, at *3 (S.D.N.Y. Feb. 15, 2013) (citations omitted). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (brackets omitted) (quoting *Shipping Fin. Servs. Corp v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998)). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence outside the pleadings. *Morrison*, 547 F.3d at 170.

#### A. Federal Tort Claims Act

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (internal quotation marks and ellipses omitted) (quoting *United States v. Mitchell,* 445 U.S. 535, 538 (1980)). The Federal Tort Claims Act "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Id.* at 85 (quoting *Hamm v. United States,* 483 F.3d 135,

137 (2d Cir. 2007)).  Specifically, the FTCA waives sovereign immunity of the United States with respect to:

> . . . claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  "[T]he FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees," and "does not waive sovereign immunity for claims based solely on alleged violations of federal law."  *Liranzo*, 690 F.3d at 86.  Because plaintiff alleges that the government's negligent act or omission occurred in New York, the source of substantive liability for her FTCA claim is New York law.

The government argues that plaintiff fails to demonstrate subject matter jurisdiction because the "independent contractor exception" to the FTCA applies.  The definition of an "employee" under the FTCA specifically excludes "any contractor of the United States."  *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) (per curiam) (quoting 28 U.S.C. § 2671).  "Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors."  *Id.*

The government relies heavily on the district court's decision in *Burke v. United States*, No. 96-cv-2470 (LBS), 1996 WL 671151 (S.D.N.Y. Nov. 19, 1996), which also involved a trip and fall on the sidewalk outside of 26 Federal Plaza, to argue that the "independent contractor exception" applies.  There, the government delegated architectural and structural maintenance and repairs, including with respect to sidewalks, to an independent contractor using nearly identical contractual language as that at issue in the present case.  *Id.* at *1.  Although the plaintiff argued that the particular condition necessitating repair was outside of the duties delegated to the contractor, the court dismissed the plaintiff's complaint, finding that the contract delegated responsibility for all

8

sidewalk repairs whose cost was not expected to exceed $25,000. *Id.* at *2. Thus, the government argues that *Burke* is indistinguishable, and that plaintiff's complaint should be dismissed for similar reasons.

As in *Burke*, here too, it is clear that ABM is an independent contractor. Indeed, plaintiff concedes that ABM is an independent contractor for purposes of the FTCA.

Plaintiff's argument that the Court has jurisdiction hinges instead on the assertion that, although the contract purports to delegate responsibility for sidewalk repairs to ABM, the contract is silent as to which particular sidewalks it covers, and therefore it is possible that the portion of the sidewalk where she fell was not covered by the contract. In support of her argument, plaintiff points to her photograph of the accident site. In what plaintiff labels "a tale of two sidewalks," she notes that the sidewalk immediately outside of the Javits Building was in "pristine condition" at the time of her accident. In contrast, the sidewalk that allegedly caused plaintiff's fall, on the curbside of a cordon of security bollards, had a large crack. She asks the Court to infer that, based on the different conditions of the portions of the sidewalks depicted, different persons or entities may have had responsibility for maintaining different portions of the sidewalk—and therefore, that ABM's responsibility for sidewalk maintenance may not have extended beyond the security bollards. Thus, in an attempt to distinguish *Burke*, plaintiff argues that the location, rather than the condition of the sidewalk, may have placed responsibility for the repair outside of the scope of duties delegated to ABM. But plaintiff's speculative assertion finds no support anywhere in the mechanical services contract and, in fact, is entirely contradicted by the factual affirmation of Mr. Polet.

As a preliminary matter, the Court addresses the applicable law governing the contract's interpretation. Although the Court looks to New York law with respect to substantive liability, as discussed above, "federal law controls the interpretation of contracts between the government and private contractors." *Gibbs v. United States*, 599 F.2d 36, 40 (2d Cir. 1979) (citing *United States v.*

9

*Seckinger*, 397 U.S. 203, 209 (1970)).  Nevertheless, "[a]lthough the interpretation of [this agreement] is governed by federal common law, in developing federal common law in an area, [the Court] may look to state law."  *Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (brackets, internal quotation marks and citations omitted); *see also Barnes v. Am. Int'l Life Assur. Co. of New York*, 681 F. Supp. 2d 513, 520 (S.D.N.Y. 2010); ("[w]hen it comes to general rules of contract interpretation, there is little difference between federal common law and New York law").

Plaintiff has not met her burden of showing, by a preponderance of the evidence, that subject matter jurisdiction exists.  First, nothing in the mechanical services contract supports plaintiff's position that ABM was responsible for maintaining and repairing only a portion of the sidewalk, but not the portion where she fell.  Indeed, the plain terms of the contract point strongly towards the opposite conclusion.  The contract broadly delegated responsibility to ABM for "*all* architectural and structural maintenance and repairs . . . to the interior and exterior of the facility *including but not limited* to" the areas specified, expressly including sidewalks and curbing.  Service Contract at 52 (emphasis added).  Nothing in this language or any other language in the contract supports the inference that the particular portion of the sidewalk where plaintiff alleges that she fell was not included within the scope of ABM's delegated responsibilities.  Although plaintiff argues that the contract is "silent" as to the particular sidewalks that are covered by the contract, "silence does not equate to contractual ambiguity."  *Greenfield v. Philles Records, Inc.*, 780 N.E. 2d 166, 173 (N.Y. 2002).  Here, the contract says that the contractor is responsible for the building's sidewalks and curbing.  The silence in the contact is found in its lack of any differentiation between one portion of the sidewalk from any other.  The contract does not tell a tale of two sidewalks, but one—one that continues to the curb.

Second, Mr. Polet's declaration unequivocally states that ABM was responsible for maintenance and repair of all sidewalks surrounding 26 Federal Plaza, from the edge of the building to the curbs of the streets, including the location where plaintiff alleges that she fell. Indeed, Mr. Polet flatly refutes plaintiff's "tale of two sidewalks"—for purposes of ABM's maintenance responsibility, there was no meaningful distinction between the two portions of the sidewalk.[2]

Although plaintiff asserts that the decision in *Pelchy v. United States*, 549 F. Supp. 2d 198 (N.D.N.Y. 2008) supports a finding of subject matter jurisdiction, her reliance on *Pelchy* is misplaced. There, the court found that the limited portions of a contract submitted by the government did not establish that an independent contractor was responsible for repairing the alleged dangerous condition outside of a federal building, and thus, the plaintiff's FTCA claim could not be resolved on a motion to dismiss. *Id.* at 202–04. Although the court in *Pelchy* noted that the contractor was clearly responsible for "maintaining" the plaza area where the plaintiff fell, *id.* at 202, the government failed to submit any evidence regarding the scope of the contractors' responsibilities, *id.* at 204. Moreover, despite the contract limiting the contractor's responsibility to repairs expected to cost no more than $2,000, the government in *Pelchy* failed to submit any evidence regarding the cost of repairs in the location that plaintiff fell. *Id.* Here, in contrast, the government submitted: the entire contract with ABM; a declaration stating that GSA delegated day-to-day supervision and

---

[2] Plaintiff did not request jurisdictional discovery. "A party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011). Courts generally permit a plaintiff resisting a motion to dismiss for lack of subject matter jurisdiction the opportunity to conduct discovery on jurisdictional facts, "at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004). But a plaintiff is not entitled to jurisdictional discovery "if it cannot show that the requested discovery is 'likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" *Molchatsky*, 778 F. Supp. 2d at 438 (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)); *see also Gualandi*, 385 F.3d at 236 (upholding district court's denial of jurisdictional discovery where plaintiffs failed to show how the requested discovery would impact the court's decision). In light of the evidence submitted by the government, which includes the entire text of the relevant contract and affidavits regarding its application from the responsible government officials, the Court believes that plaintiff's decision not to pursue further discovery was reasonable.

responsibility for architectural and structural repairs of sidewalks to ABM; evidence regarding the estimated cost of repairs; and a declaration stating that GSA did not conduct those repairs. Thus, the holding in *Pelchy* is inapposite.

Plaintiff offers nothing but speculation, unsupported by the contract or factual averment, in support of her position. More than even an inference in favor of finding jurisdiction, what plaintiff asks is for the Court to make an inferential leap. The Court will not do so. The terms of the contract, together with the declaration of Thomas Polet, establish that responsibility for all sidewalk repair and maintenance—including the location where plaintiff fell—was delegated to ABM.[3] Accordingly, plaintiff has failed to establish subject matter jurisdiction, and defendant's motion to dismiss the FTCA claim is GRANTED.

### B. State Law Claim

Plaintiff asserts that notwithstanding the government's delegation to ABM of all responsibility for sidewalk maintenance and repairs, the government may nevertheless be held liable as a landowner under state law. Section 7-210 of the New York City Administrative Code provides that "[i]t shall be the duty of the owner of real property abutting any sidewalk . . . to maintain such sidewalk in a reasonably safe condition." N.Y.C. Admin. Code § 7-210(a). Section 7-210 further establishes liability "for any . . . personal injury . . . proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition." N.Y.C. Admin. Code § 7-210(b).

---

[3] Plaintiff fails to argue that the estimated cost of the sidewalk repair placed it outside of the scope of the duties delegated to ABM. In any event, such an argument would be unavailing. Although the contract provided that repairs estimated between $5,000 and $100,000 were subject to prior GSA agreement regarding price, "the price approval provision does not convert [ABM] from an independent contractor to an employee of the government." *Burke*, 1996 WL 671151, at *2 n.1 (citing *United States v. Orleans*, 425 U.S. 807, 816 (1976)); *see also Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp. 2d 57, 62 (S.D.N.Y. 2005) ("The retention of a right to inspect the progress of a contractor's project or the reservation of broad supervisory powers to control a contractor's compliance with the contract's specifications does not establish the agency relationship necessary for FTCA jurisdiction over the Government.") (collecting cases). Moreover, the estimated cost of the repair was less than $5,000, and therefore not subject to the price-approval provision of the mechanical services agreement. Polet Decl. at ¶¶ 8–9.

But in *Roditis*, the Second Circuit expressly rejected plaintiff's argument, holding that "any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity from suits for injuries caused by its independent contractors." 122 F.3d at 111.  Accordingly, courts in this circuit have consistently rejected plaintiff's argument.  *See, e.g., Squicciarini*, 2013 WL 620190, at *5 ("[W]here the Government delegates all responsibility for maintaining the safety of the premises to an independent contractor, it cannot be held liable under the FTCA for injuries that occur on the premises solely because it is the landowner.").  *Tzul v. United States*, No. 12-cv-804 (NGG) (JMA), 2014 WL 4773974 (E.D.N.Y. Sept. 24, 2014), which plaintiff cites in opposition, provides no support to the contrary—no independent contractor was involved in that case, and thus, it is plainly inapposite.  Because the government may not be held liable for a negligent act or omission of an independent contractor, even where state law would impose such liability, plaintiff's state law claim must be dismissed.

## IV. CONCLUSION

For the reasons outlined above, defendant's motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 17, and to close this case.

SO ORDERED.

Dated:  December 3, 2015  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge